IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES H. TAKECHI, | ) | No. C 10-3777 LHK (PR) |
| Plaintiff, | ) ) | ORDER DENYING PETITION FOR |
| vs. | ) ) | WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| DERRAL G. LEWIS, Warden, | ) ) | |
| Defendants. | ) ) | |

Petitioner, currently incarcerated at Pelican Bay State Prison and proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 25, 2010. Respondent has filed an answer. Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED.

**BACKGROUND**

On Wednesday August 6, 2008, at approximately 10:00 a.m., Officers Huebner and Galvan were conducting cell searches at Pelican Bay State Prison. (Traverse Ex. B at 2.) Both officers approached cell 3A-205, occupied by Petitioner and Inmate Long. (*Id.*) Officer Galvan opened the food cuff/port and ordered both inmates to cuff up. (*Id.*) Both inmates complied with the order. (*Id.*) Then, Petitioner stepped away from the food/cuff port, walked over to the lower bunk, grabbed an unknown object in his right hand, and attempted to flush the object in

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.10\Takechi777denhc.wpd

the toilet. (*Id.*) Officer Huebner immediately emptied the contents of his MK-9 OC pepper spray fogger into the cell, spraying Petitioner in the back and neck area. (*Id.*) Officer Huebner then escorted Petitioner out of the housing unit while Officer Galvan escorted Inmate Long from the housing unit. (*Id.*) Petitioner was charged with disobeying a direct order, as documented in a Rule Violation Report ("RVR").

On August 21, 2008, Petitioner was interviewed by Officer Hutton regarding the RVR. (Answer Ex. 2 at 3.) During that interview, Petitioner stated that, "[Officer Huebner] did not give any order to not flush the toilet. It was just a piece of toilet paper." (*Id.*) Officer Huebner stated that "both [Petitioner] and Inmate Long cuffed up. Petitioner walked over, grabbed something from the lower bunk and tried to flush it down the toilet. So [Officer Huebner] sprayed [Petitioner] with [his] pepper spray to get him to stop." (*Id.*)

On September 19, 2008, the disciplinary board found Petitioner guilty of disobeying a direct order. (Traverse Ex. A at 1.) According to the disciplinary board's report, its decision was based upon the following findings:

> A. The reporting employee's written report wherein Correctional Officer Huebner gave Inmate Takechi orders to turn around, place his hands through the cuff port and be placed into handcuffs. Inmate Takechi went towards the toilet and began flushing.
> B. The reporting employee further documents that OC Pepper spray was used to gain compliance with a direct order.
> C. Correctional Officer Huebner CDCR 837 C Staff Report submitted in the CDCR Crime/Incident Report log #FA-4A-08-08-0279 wherein Officer Huebner gave Inmate Takechi orders to turn around, place his hands through the cuff port and be placed into handcuffs. Inmate Takechi went towards the toilet and began flushing. Officer Huebner further documents that OC Pepper spray was used to gain compliance with a direct order.

(*Id.*)

Petitioner submitted an administrative appeal which was bypassed at the informal and first levels of review. (Answer Ex. 3 at 10.) In his appeal, Petitioner claimed he complied with the only direct order given, to cuff up. (*Id.* at 5.) Subsequently, after being cuffed up, and while waiting for the control tower to open the cell, Petitioner grabbed some dirty toilet paper by his pillow and tried to toss it in the toilet. (*Id.*) At this point, and without any verbal warning, Officer Huebner emptied a can of OC pepper spray on Petitioner. (*Id.*) Petitioner claimed the

1  board's finding of guilt was improper because the charge of disobeying a direct order requires
2  evidence the inmate be given a direct order by a staff member, and that the inmate refuse to
3  comply. (*Id.*)  According to Petitioner, because he complied with the only direct order given –
4  to cuff up – he claimed he did not disobey a direct order. (*Id.*)

5  On December 18, 2008, Petitioner's appeal at the second level of review was denied.
6  (*Id.*)  The report stated, "it is noted that once [Petitioner] had been placed in handcuffs, he is
7  under the direct control of the escorting officer and shall do nothing more than instructed.  Any
8  movement beyond given instruction is considered an act of disobedience." (*Id.* at 6.)

9  At the Director's Level of review, the decision summarized the second level reviewer's
10 factual findings by stating, in relevant part, "the [Petitioner] was told that once he was placed in
11 handcuffs, he is under direct control of the escorting officer, and shall do nothing more than he is
12 instructed to." (*Id.* at 1.)  Thereafter, Petitioner's appeal was denied by the Director's Level.
13 (*Id.*)

14 On December 14, 2009, Petitioner filed a petition for writ of habeas corpus in Superior
15 Court of California, the prison disciplinary board's finding of guilt on the charge of disobeying a
16 direct order. (Answer Ex. 5.)  On February 3, 2010, the Superior Court denied the petition
17 stating, "Petitioner has failed to establish sufficient grounds or circumstances upon which relief
18 may be granted.  Sufficient facts supported the administrative decision." (Answer Ex. 7.)  On
19 April 2, 2010, the California Court of Appeal denied the petition for writ of habeas corpus
20 without comment. (Answer Ex. 9.)  On June 9, 2010, the petition was denied in the Supreme
21 Court of California without comment. (Answer Ex. 11.)  The instant federal petition was filed
22 on August 25, 2010.

**DISCUSSION**

I.   Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The

petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

II.     Analysis of Legal Claim

As grounds for federal habeas relief, Petitioner claims the disciplinary board's decision, finding him guilty of disobeying a direct order, was not supported by any evidence. Under well established Supreme Court precedent, the process due in a prison disciplinary hearing includes written notice, time to prepare for the hearing, a written statement of the decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). In addition, the findings of the prison disciplinary decision-maker must be supported by

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.10\Takechi777denhc.wpd
4

some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). There must be "some evidence" from which the conclusion of the decision-maker could be deduced. *Id.* at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. *Id.* Rather, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary decision-maker. *Id.*

For example, in *Hill*, Gerald Hill and Joseph Crawford, inmates at a state prison, each received prison disciplinary reports charging them with assaulting another inmate. *Id.* at 447. At separate hearings for each inmate, the prison disciplinary board heard testimony from a prison guard and received his written disciplinary report. *Id.* The guard's written report indicated that the guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. *Id.* at 456-57. The guard saw three other inmates fleeing together down an enclosed walkway; no other inmates were in the area. *Id.* The lower court found that this evidence was constitutionally insufficient because it did not support an inference that more than one person had struck the victim or that either of the respondents was the assailant or otherwise participated in the assault. *Id.* However, the Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. *Id.* Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing. *Id.* Although the evidence in *Hill* might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record was not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. *Id.*

Similarly, in the instant case, Petitioner was found guilty by the disciplinary board of disobeying a direct order because he attempted to throw something in the toilet after being ordered to cuff up for a cell search. (Answer Ex. 2.) As long as there is some evidence from which the conclusion of the administrative tribunal could be deduced, the decision comports with the minimum requirements of procedural due process. *See id.* at 455. Inspections of inmate cell

or living areas, property, work areas, and body are conducted on an unannounced, random basis as directed by the institution head. Cal. Code Regs. tit. 15, § 3287 (2011). Such inspections are conducted for the purposes of controlling contraband, recovering missing or stolen property, and maintaining proper security of the institution. *Id.* The order to cuff up was given while the officers were conducting cell searches. (Answer Ex. 8 at 2.) Although the disciplinary board and administrative review levels indicate that Petitioner understood he should not do anything more than what he is instructed to do (Traverse Ex. B at 2; Answer Ex. 3 at 1, 6), the Court understands Petitioner's frustration because the incident and rules violations reports do not show that Petitioner was actually given that instruction. Nonetheless, although the only verbal order given to Petitioner was to cuff up in preparation for a cell search, a reasonable inference can be drawn that once Petitioner was ordered to cuff up for purposes of a cell search, attempting to flush an unknown object down the toilet would be considered an act of disobedience. *See United States v. Begay*, No. 07-10487, 2011 WL 94566, 5 (9th Cir.) *cert. denied*, 132 S. Ct. 754 (2011) (recognizing that reasonable inferences are distinguished from mere speculation where they are supported by a "chain of logic."). Here, a chain of logic certainly supports a reasonable inference from the circumstances that Petitioner's conduct of attempting to flush an item down the toilet was a refusal to comply with the officer's direct order. *See id.*

Just as in *Hill*, although the evidence here might be characterized as meager, and there is no direct evidence that Petitioner was expressly told not to move after being placed in handcuffs, the record is not so devoid of evidence that the finding of the disciplinary board was without support or otherwise arbitrary. *See Hill* at 456-57. Because Petitioner has not demonstrated that the state court's decision was contrary to or an unreasonable application of *Hill*, federal habeas relief is not warranted. *See* 28 U.S.C. § 2254(d)(1).

## CONCLUSION

Petitioner's petition for writ of habeas corpus is DENIED.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.10\Takechi777denhc.wpd

1  ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  Petitioner has
2  not shown "that jurists of reason would find it debatable whether the petition states a valid claim
3  of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).
4  Accordingly, a COA is DENIED.
5      The Clerk shall close the file.
6      IT IS SO ORDERED.
7  DATED: 5/10/12

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.LHK\HC.10\Takechi777denhc.wpd

7